## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWARD AND JOANN AGOSTINELLI** * | | |
| **Plaintiffs,** * | | |
| **vs.** * | **CV-10-294-CG-B** | |
| **FIFTH THIRD BANK, FIFTH THIRD** * | | |
| **MORTGAGE COMPANY,** * | **JURY TRIAL DEMANDED** | |
| **Defendant.** * | | |

### AMENDED COMPLAINT

NOW COME Plaintiffs Edward and Joann Agostinelli, and amend their Complaint to read as follows:

| | | |
|---|---|---|
| **"EDWARD AND JOANN AGOSTINELLI** * | | |
| **Plaintiffs,** * | | |
| **vs.** * | **CV-10-294-CG-B** | |
| **FIFTH THIRD BANK, FIFTH THIRD** * | | |
| **MORTGAGE COMPANY, TRACKSURE** * | | |
| **INSURANCE AGENCY, INC., A DIVISION OF** * | | |
| **ASSURANT, INC.;  EQUIFAX INFORMATION** * | | |
| **SERVICES, LLC; EXPERIAN INFORMATION** * | | |
| **SOLUTIONS, INC.; and TRANSUNION, LLC,** * | | |
| **Defendants.** * | | |

### AMENDED COMPLAINT

COMES NOW Edward and JoAnn Agostinelli, by and through their undersigned attorney, and as their Amended Complaint against the above-named Defendants state as follows:

### SUMMARY OF CLAIMS

These claims arise from the servicing of a real estate mortgage loan secured by the Plaintiffs' property located in Gulf Shores, Alabama.  Defendant Fifth Third Bank ("FTB") has repeatedly attempted to collect sums under the mortgage which are not due and has repeatedly held Plaintiffs

in default when, in truth, Plaintiffs have at all times complied fully with the terms of their mortgage. FTB initiated non-judicial foreclosure proceedings and scheduled a foreclosure sale for March 4, 2010. Plaintiffs were forced to bring this action to stop that foreclosure. Yet, there has been no default by Plaintiffs and FTB was without any legal right to conduct a foreclosure sale. FTB also wrongfully reported to the major consumer reporting agencies that Plaintiffs were behind in their mortgage payments and FTB failed to adequately investigate and remove the false reporting after Plaintiffs' dispute. FTB also failed to timely pay flood insurance premiums for which funds were paid to FTB or its agents by Plaintiffs. Rather than pay the premiums from monies already paid by Plaintiffs, FTB and its agent Defendant Assurant, Inc., wrongfully force placed a policy and charged Plaintiffs' account which caused FTB to consider the account delinquent. FTB and its agent Assurant are jointly and severally liable to Plaintiffs for wrongful acts and omissions concerning the insurance premium. FTB is also liable for a violation of Section 2605(g) of the Real Estate Settlement Procedures Act ("RESPA"), 12. U.S.C. § 2605(g) which requires timely payment of insurance premiums.

FTB has falsely reported to consumer reporting agencies that Plaintiffs have failed to timely make their mortgage payments. Plaintiffs submitted disputes to the major consumer reporting agencies, including Defendants Experian, Equifax and Transunion ("CRA Defendants"), as allowed pursuant to the Fair Credit Reporting Act ("FCRA"), 15. U.S.C. 1681. FTB failed to conduct any reasonable investigation of Plaintiffs' disputes and has failed to delete the false information, all in violation of the FCRA. Each of the CRA Defendants initially corrected the false information furnished by FTB, but then reinserted that information without complying with applicable provisions of the Fair Credit Reporting Act.

Plaintiffs seek recovery of compensatory, punitive and statutory damages as a result of Defendants' wrongful acts, as well as attorneys fees and costs.

## PARTIES

1.      Plaintiffs are adult residents of Baldwin County and the owners of real property

located at 24613 Gulf Bay Road, Gulf Shores, AL (hereinafter "Property").

      2.      Fifth Third Bank ("FTB") is a corporation with its principal place of business in Ohio and which, at all times relevant hereto, did business in Baldwin County, Alabama.

      3.      Tracksure Insurance Agency, Inc. ("Tracksure") is a corporation formed under the laws for the State of California with its principal place of business in California. Tracksure is a division of Assurant, Inc., which is a corporation formed under the laws for the State of New York with its principal place of business in New York. At all relevant times, Assurant Inc. and Tracksure conducted business in Baldwin County, Alabama. Assurant Inc. and Tracksure are collectively referred to herein as "Assurant."

      4.      Experian Information Solutions, Inc. ("Experian") is a company formed under the laws of the State of Ohio and has its principal place of business in the State of Ohio.

      5.      Transunion, LLC ("Transunion") is a company formed under the laws of the State of Delaware and has its principal place of business in the State of Illinois.

      6.      Equifax Information Systems ("Equifax") is a company formed under the laws of the State of Georgia and has its principal place of business in the State of Georgia.

      7.      Equifax, Transunion  and Experian are collectively referred to herein as "CRA Defendants."

## FACTS

      8.      Plaintiffs live in Baldwin County, Alabama. Plaintiffs own and operator a successful local flooring company with facilities in Mobile and Baldwin Counties.

      9.      Plaintiffs own real property located at 24613 Gulf Bay Road in Orange Beach, Alabama. On or about June 6, 2007, Plaintiffs obtained a mortgage loan with FTB which was secured by the Orange Beach property. The amount of the loan was $817,000. The loan was financed over a period of 30 years, with a fixed interest rate. Monthly payments of principal and interest are due in the amount of $5,097.02.

      10.      At the outset of the loan Plaintiffs were required to pay the amounts necessary for

3

payment of taxes and insurance into an escrow account maintained by FTB.  In addition, amounts were collected by FTB at closing which were to be used to pay the initial premiums covering the first year of the loan. FTB was required under the mortgage to pay insurance and taxes out of the funds collected at closing and the funds paid into escrow.

11.     The total monthly payment amount, including escrow, was $5,824.17.

12.     FTB failed to pay the flood insurance premium due for the 2007-2008 flood policy and the policy lapsed for non-payment. Plaintiffs were required to make a payment directly to the insurance company in order to reinstate the policy.  After receiving the notice of lapse, Mrs. Agostinelli called FTB about the insurance. The FTB representative confirmed that the bank failed to make the insurance payment out of the escrowed funds. Wishing to avoid any future mishaps with the insurance, Mrs. Agostinelli asked FTB to cancel the escrow so that she could pay the insurance and taxes directly. FTB agreed, cancelled the escrow, refunded the amounts collected for the escrow and confirmed that the amount due each month under the mortgage would be $5,097.02 - the principal and interest amount only.

13.     Upon information and belief, FTB has contracted with Assurant to assure that timely payments are made for insurance premiums regarding flood policies which FTB's borrowers are required to maintain on their property.  FTB has claimed that the failure to pay the premium regarding the Plaintiffs' property was, at least in part, the fault of Assurant.  If FTB's claim is correct, Assurant is jointly and severally liable to Plaintiffs for damages caused by the failure to pay the premiums.

14.     Plaintiffs at all times thereafter timely made the principal and interest payments.  In fact, for many months Plaintiffs made payments in the amount of $6,000 each month with the expectation that the excess was being applied to principal.  These payments were made until June 2009 when Plaintiffs tendered a payment of $5,100.

15.     On June 10, 2009, FTB sent Plaintiffs a letter stating that the $5,100 payment was less than the amount due under the mortgage, which FTB claimed was $5,384.52.  This was the first

4

notice received by Plaintiffs that FTB was requiring payments in excess of the principal and interest due each month. FTB had no basis for requiring payments in excess of the principal and interest accrued - $5,097.02.

16.     Soon after receiving the June 10th letter, Mrs. Agostinelli contacted FTB. She explained the situation and asked why FTC was requiring $5,384.52 when the insurance and taxes were being paid directly by the Agostinellis. After reviewing FTB's computerized records, the representative confirmed that the escrow had been cancelled and that the correct monthly payment amount was the $5,097.02 principal and interest payment. Mrs. Agostinelli assumed that the problem was corrected.

17.     However, about a week later, Plaintiffs received another notice from FTB, this time stating that the loan was "past due" in the amount of $5,384.52. Mrs. Agostinelli again called FTB. She was told that FTB would investigate the matter and would get back to her in approximately two weeks.

18.     In the meantime, Plaintiffs made timely principal and interest payments for June and July 2009.

19.     FTB sent another notice on July 21st stating that the loan was past due in the amount of $5,384.52. At around the same time, FTB mailed Plaintiffs a payment coupon which showed the amount due each month as $5,097.02.

20.     Plaintiffs timely made the principal and interest payment due for August 2009.

21.     Plaintiffs received notices dated August 19th and August 21st each stating that the loan was "past due" in the amount of $5,384.52.

22.     At around the same time, FTB began reporting to consumer reporting agencies, including Experian, Equifax and Transunion, that the Plaintiffs were behind in their mortgage payments. This was false and FTB knew or should have known the information was false at the time it was reported.

23.     Plaintiffs operate a business which, like most successful businesses, relies on the

5

availability of credit.  Maintaining a good credit score on their personal credit files is crucial for the continued success of the Plaintiffs' business.  Concerned over the effects FTB's false reporting may have on their personal credit scores and their business, Plaintiffs initiated disputes with all three CRA Defendants.  These disputes were made by letter dated August 19, 2009.  Copies of these disputes, including all attachments, were mailed directly to FTB on that same day.

24.     On August 19th, Plaintiffs mailed a separate letter to FTB explaining the belief that FTB made a mistake with the escrow.  The letter also included specific requests for information regarding the servicing of their loan

25.     FTB sent Plaintiffs a letter in response to the credit reporting dispute.  By letter dated August 27th, FTB confirmed that the information reported to the credit bureaus was false and stated that all negative reporting regarding the mortgage would be removed.  FTB submitted the letter as "proof" to be used by Plaintiffs that FTB had corrected the situation and had removed the negative reporting regarding the mortgage.

26.     On or about September 2, 2009, FTB mailed Plaintiffs a check in the amount of $4,530.96.  The check was sent to Plaintiffs without any explanation of what these funds represent.  At around the same time, Plaintiffs made their regular monthly payment for September by check which was negotiated by FTB on or about September 10, 2009.

27.     On September 11, 2009, FTB wrote to Plaintiffs once again stating that their mortgage loan was "past due" and that "foreclosure may be just around the corner."  As before, Mrs. Agostinelli called and spoke with an FTB representative about the notice. This time, however, the FTB representative insisted that Plaintiffs were behind on the mortgage and that there would be a foreclosure if they failed to pay the past due amount.

28.     On September 23, 2009, FTB wrote Plaintiffs in response to Plaintiffs' "inquiry" regarding amounts due under the mortgage.  FTB explained that the monthly payment had been "corrected" and would return to $5,097.02 as of August 1, 2009.

29.     On or about September 30, 2009, FTB sent a check to Plaintiffs in the amount of

6

$5,097.02, with no explanation as to why the check was being tendered.

30.     On that same day, FTB sent another letter stating Plaintiffs were "in default on your mortgage...for failing to make monthly scheduled payments." The letter went on to state that the amount past due on the mortgage was $15,591.06. FTB also stated in the letter that immediate payment of the past due amount was required in order to cure the default and to avoid "acceleration of the loan and foreclosure of the property." That letter was followed by another letter dated October 2, 2009, wherein FTB urged Plaintiffs to take action to avoid foreclosure.

31.     Plaintiffs timely made the principal and interest payment due for October 2009.

32.     At around this same time, Mrs. Agostinelli attempted to contact the same FTB representative who had confirmed for her that the loan was not in default. Mrs. Agostinelli was not able to speak to that person. Her attempts to resolve the situation through phone calls made to FTB were unsuccessful.

33.     On October 14, 2009, FTB wrote Plaintiffs stating that their October payment was being returned because it was "an insufficient amount to pay your mortgage loan current." FTB's letter further states that "this account has now been referred to an attorney for foreclosure." The Plaintiffs' October 7th check for $5,097.02 was attached to the letter.

34.     On October 30, 2009, FTB wrote once again urging them to take action to avoid the imminent foreclosure of their property.

35.     At the beginning of November, Plaintiffs tendered the regular monthly payment of $5,097.02. The check for that payment was accepted and was negotiated by FTB on or about November 10, 2009. Nevertheless, FTB sent Plaintiffs another default notice on November 9th stating that Plaintiffs had failed to make the payments due. This time, the stated amount past due was $20,799.58. As in its earlier letter, FTB warned that failure to pay this amount would result in acceleration of the loan and foreclosure of the property. The November 9th letter was followed by a December 4th letter which again urged Plaintiffs to take immediate actions to avoid imminent foreclosure.

7

36.     Plaintiffs timely made the principal and interest payment due for December 2009.

37.     On December 14, 2009, FTB returned the Plaintiffs' check tendered for the December 2009 payment, stating that the amount tendered was insufficient to bring the loan current. The letter explained that the account "has now been referred to an attorney for foreclosure."

38.     Despite FTB's assurances made verbally and in writing that it would stop reporting to the credit bureaus that Plaintiffs had not paid their mortgage, FTB continued to falsely report that Plaintiffs were in default. As a result, Plaintiffs received denial letters on credit card applications in December 2009. The denials were caused solely by the false information reported by FTB.

39.     On December 22nd, FTB wrote a letter in "response to [Plaintiffs'] recent inquiry regarding a missing or misapplied mortgage loan payment." In its letter, FTB confirmed that it had posted the payments "according to [Plaintiffs'] instructions." FTB also stated that it was waiving all related fees and that it had "provided credit bureau corrections." As in the September 23rd letter described above, FTB urged Plaintiffs to "[p]lease accept our sincere apologies for any inconvenience that this may have caused." Despite these statements, FTB continued to report the mortgage in default.

40.     On December 23rd, FTB wrote Plaintiffs another letter stating that it had received a check for $748.40 and requested instructions for applying that payment. The letter stated that the amount did not match the regular monthly amount of $5,097.02.

41.     Plaintiffs have never made a payment in the amount of $748.40.

42.     On or about December 31, 2009, FTB sent Plaintiffs a check in the amount of $748.40. That check was tendered without any explanation.

43.     Plaintiffs timely made the principal and interest payment due for January 2010.

44.     On February 4, 2010, Plaintiffs received a written notice of a foreclosure sale scheduled for March 4, 2010. The notice was delivered by Trustee Management Company on behalf of FTB. The notice did not provide any statement as to the alleged past due amount or actions which would be necessary for curing any alleged default in reinstating the mortgage.

8

45.   All three CRA Defendants timely responded to Plaintiffs August 19th by informing them that the false information reported by FTB had been corrected. However, by January 2010, the same false information previously removed had been reinserted by each of the CRA Defendants. The FCRA, 15 U.S.C. 1681i(a)5)(B), imposes certain requirements upon the CRA Defendants when previously deleted information is reinserted into a consumer's credit file. These requirements include written notice of the reinsertion which must be given to the consumer not later than 5 days after the reinsertion. All three CRA Defendants failed to provide such notice or otherwise comply with 15 U.S.C. § 1681i(a)5)(B). 15 U.S.C. 1681.

**COUNT I**
**(BREACH OF MORTGAGE AGREEMENT)**

46.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

47.   The acts and omissions made by Defendant in connection with management of the Plaintiffs' mortgage constitute a breach of the mortgage and note. Those acts and omissions include, but are not limited to, the following: the failure to timely pay insurance premiums out of escrow; the failure to properly credit, account for and apply payments received; making demands for payment of amounts not due; threatening foreclosure in the absence of any default; the refusal and return of payments properly tendered by Plaintiffs; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default. FTB has further violated the mortgage agreement by instituting foreclosure proceedings without providing the notices and opportunity to cure required under the mortgage; and by claiming money not due under the mortgage including, but not limited to, fees for force-placed insurance in the absence of any authority for placing the insurance or charging the fees.

48.   Plaintiffs have suffered damage as a proximate result of the Defendant's breach.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant for breach of the mortgage and award compensatory damages, including damages for mental anguish

and emotional distress, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT II
### (BREACH OF FIDUCIARY DUTY)

49.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

50.     Defendant at all relevant times owed Plaintiffs an implied fiduciary duty of fairness and good faith as to all aspects of the mortgage agreement, including the management of their payments and the exercise of any power of sale clause contained in the mortgage.

51.     The acts and omissions made by Defendant FTB in connection with management of the Plaintiffs' mortgage constitute a breach of the duty owed by Defendant FTB.  Those acts and omissions include, but are not limited to, the following: the failure to timely pay insurance premiums out of escrow; the failure to properly credit, account for and apply payments received; making demands for payment of amounts not due; threatening foreclosure in the absence of any default; the refusal and return of payments properly tendered by Plaintiffs; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default.  The trust imposed upon Defendant FTB by Plaintiffs and by operation of law and equity has been breached by the said acts and omissions of Defendant FTB as alleged herein, and Plaintiffs have been damaged as a result of said breach.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant FTB for breach of the duties owed to Plaintiffs.  Plaintiffs also request that this Court award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs, and punitive damages.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT III
### (NEGLIGENCE)

52.     The allegations stated in all of the above paragraphs are incorporated as if fully

asserted herein.

53.     The acts and omissions made by Defendants FTB and Assurant in connection with their management of the Plaintiffs' account constitute negligence. Those acts and omissions include, but are not limited to, the following: the failure to timely pay insurance premiums out of escrow; the failure to properly credit, account for and apply payments received; making demands for payment of amounts not due; threatening foreclosure in the absence of any default; the refusal and return of payments properly tendered by Plaintiffs; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default.

54.     Plaintiffs have suffered damage as a proximate result of the Defendants' negligence.

55.     Defendants FTB and Assurant have negligently hired, trained and/or supervised its employees.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants FTB and Assurant for negligence and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
### (WANTONNESS)

56.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

57.     The acts and omissions made by Defendants FTB and Assurant in connection with their management of the Plaintiffs' account constitute wantonness. Those acts and omissions include, but are not limited to, the following: the failure to timely pay insurance premiums out of escrow; the failure to properly credit, account for and apply payments received; making demands for payment of amounts not due; threatening foreclosure in the absence of any default; the refusal and return of payments properly tendered by Plaintiffs; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default.

58.     Plaintiffs have suffered damage as a proximate result of the Defendants' wantonness.

59.    Defendants FTB and Assurant have wantonly hired, trained and/or supervised its employees.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants FTB and Assurant for wantonness and award  compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT V
### (WRONGFUL FORECLOSURE)

60.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

61.    The institution of  foreclosure proceedings by Defendant FTB is wrongful.

WHEREFORE Plaintiffs request that this Court enter judgment against Defendant FTB for wrongful foreclosure and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT VI
### (DEFAMATION)

62.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

63.    The publication of the above-described foreclosure notice contained derogatory and defamatory statements which Defendant FTB knew or should have known were false.  These statements include the statements published with the foreclosure notice that Plaintiffs were in default of their mortgage agreement. Plaintiffs have suffered damages as a result of this defamation.  The defamation also occurred through the false and derogatory information published to the CRA Defendants by FTB.  The derogatory, false and defamatory information published by FTB to the CRA Defendants was furnished with malice or willful intent to injure Plaintiffs

WHEREFORE Plaintiffs request that this Court enter judgment against Defendant FTB for

12

defamation and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

**COUNT VII**
**(FCRA VIOLATIONS BY FTB)**

64.     Plaintiffs reallege and incorporate each of the preceding paragraphs as if fully set out herein.

65.     This is a claim for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*

66.     Defendant FTB furnishes credit information to consumer credit reporting agencies as those terms are defined by FCRA. FTB is subject to requirements of FCRA, including those duties set out in 15 U.S.C. §1681s-2(b).

67.     At all relevant times, Defendant FTB provided derogatory and false credit information to the major consumer reporting agencies ("CRAs"), including Defendants Experian, Equifax and Transunion, that Plaintiffs were behind in their mortgage payments. This was false and FTB knew or should have known the information was false at the time it was reported. This false and derogatory information was reported by the CRA Defendants to third parties, including Plaintiffs' potential lenders and others who may be in a position of evaluating Plaintiffs' creditworthiness, credit standing, credit capacity, character and general reputation.

68.     As stated above, Plaintiffs submitted disputes regarding this information to the CRAs and requested that the derrogatory information be removed. A true and accurate copy of each of the disputes was mailed to FTB. Upon information and belief, notice of the dispute was also forwarded to FTB by the CRA Defendants.

69.     Information was available to FTB that should have, upon any reasonable investigation, informed FTB that the reporting of any delinquency owed by Plaintiffs was false. Specifically, FTB knew, should have known or could, upon reasonable investigation, have discovered that any delinquency showing on its system was caused by the failure to pay flood

13

insurance payments which failure was caused by FTB and/or its agents.

70.     Despite its knowledge that the information being reported on Plaintiffs' credit file was false, Defendant FTB continued to report the false and derogatory information as accurate, knowing that by doing so Plaintiffs' creditworthiness would be damaged.

71.     Defendant FTB has taken actions which violate FCRA, specifically 15 U.S. §1681s-2(b). These actions include, but are not limited to, the following:

A.      Failing to fully, properly or reasonably investigate Plaintiffs' dispute of the reporting of the false and derogatory information;

B.      Failing to review all relevant information regarding Plaintiffs' dispute and/or by disregarding that information after review;

C.      After receiving notice of Plaintiffs' dispute, continuing to submit false and derogatory information to the CRAs regarding the mortgage payment history.  FTB knew that information to be false, incomplete and/or not verifiable.

D.      Failing to modify, delete or permanently block the reporting of credit information regarding Plaintiffs which FTB knew to be false, incomplete and/or not verifiable.

E.      Failing to accurately respond to Plaintiffs' disputes made through the CRA Defendants after receipt of that dispute.

72.     As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit; mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

73.     Defendant FTB's acts and/or omissions made in violation of the FCRA were willful, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. §1681n.

74.     Defendant FTB's acts and/or omissions made in violation of the FCRA were negligently made, entitling Plaintiffs to recover the remedies provided pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant FTB

for negligent and willful violations of the FCRA and award Plaintiffs actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT VIII
## (VIOLATION OF RESPA)

75.     Plaintiffs reallege all the preceding allegations referenced as if set out here in full.

76.     Defendant FTB is the servicer of the Plaintiffs' mortgage.

77.     Plaintiffs' loan is a federally related mortgage loan within the meaning of 12 U.S.C. § 2602(1).

78.     Defendant FTB has violated RESPA, 12 U.S.C. § 2605(g), by failing to make timely payments out of escrowed funds for flood insurance or for otherwise failing to ensure that the policy purchased with the escrowed funds did not lapse.

79.     Defendant has violated RESPA, 12 U.S.C. § 2605(e) by failing to timely respond to Plaintiffs' qualified written request.

WHEREFORE, Plaintiffs demand judgment against Defendant for violation of RESPA awarding Plaintiffs the remedies provided under that statute, including but not limited to actual damages, statutory damages provided in 12 U.S.C. § 2605(f), attorneys fees and all costs of this litigation, and all other just, general and equitable relief.

## COUNT IX
## (FCRA VIOLATIONS BY EXPERIAN)

80.     Plaintiffs reallege and incorporate all of the preceding paragraphs as if fully set out herein.

81.     This count states claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA") against Defendant Experian pursuant to 15 U.S.C. §§ 1681o and 1681n.

82.     Defendant Experian is a "consumer reporting agency" as that term is defined in FCRA.

15

83.     Experian has reported false and derogatory credit information relating to Plaintiffs' FTB mortgage. This information was reported to third parties, including Plaintiffs' potential lenders and others who may be in a position of evaluating Plaintiffs' creditworthiness, credit standing, credit capacity, character and general reputation. This false and derogatory information was, at all relevant times, reported by Experian to said third parties by a "consumer report" as that term is defined in the FCRA.

84.     On or about August 19, 2009, Plaintiffs notified Experian that the information being reported on their credit file was false.

85.     Experian conducted an investigate and deleted the disputed information.

86.     At some point thereafter, Experian reinserted the disputed and previously deleted information.

87.     In reinserting the disputed and previously deleted information, Experian failed to comply with the requirements of 15 U.S.C. 1681i(a)5)(B), including the required written notice of the reinsertion which must be given to the consumer not later than 5 days after the reinsertion.

88.     As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit; mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

89.     Experian's acts and/or omissions made in violation of the FCRA were willful, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. §1681n.

90.     Experian's acts and/or omissions made in violation of the FCRA were negligently made, entitling the Plaintiffs to recover the remedies provided pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant Experian for negligent and willful violations of the FCRA and award Plaintiffs actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT X
## (FCRA VIOLATIONS BY TRANSUNION)

91.     Plaintiffs reallege and incorporate all of the preceding paragraphs as if fully set out herein.

92.     This count states claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA") against Defendant Transunion pursuant to 15 U.S.C. §§ 1681o and 1681n.

93.     Defendant Transunion is a "consumer reporting agency" as that term is defined in FCRA.

94.     Transunion has reported false and derogatory credit information relating to Plaintiffs' FTB mortgage. This information was reported to third parties, including Plaintiffs' potential lenders and others who may be in a position of evaluating Plaintiffs' creditworthiness, credit standing, credit capacity, character and general reputation. This false and derogatory information was, at all relevant times, reported by Transunion to said third parties by a "consumer report" as that term is defined in the FCRA.

95.     On or about August 19, 2009, Plaintiffs notified Transunion that the information being reported on their credit file was false.

96.     Transunion conducted an investigate and deleted the disputed information.

97.     At some point thereafter, Transunion reinserted the disputed and previously deleted information.

98.     In reinserting the disputed and previously deleted information, Transunion failed to comply with the requirements of 15 U.S.C. 1681i(a)5)(B), including the required written notice of the reinsertion which must be given to the consumer not later than 5 days after the reinsertion.

99.     As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit; mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

100.     Transunion's acts and/or omissions made in violation of the FCRA were willful, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. §1681n.

101.    Transunion's acts and/or omissions made in violation of the FCRA were negligently made, entitling the Plaintiffs to recover the remedies provided pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant Transunion for negligent and willful violations of the FCRA and award Plaintiffs actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

**COUNT XI**
**(FCRA VIOLATIONS BY EQUIFAX)**

102.    Plaintiffs reallege and incorporate all of the preceding paragraphs as if fully set out herein.

103.    This count states claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA") against Defendant Equifax pursuant to 15 U.S.C. §§ 1681o and 1681n.

104.    Defendant Equifax is a "consumer reporting agency" as that term is defined in FCRA.

105.    Equifax has reported false and derogatory credit information relating to Plaintiffs' FTB mortgage. This information was reported to third parties, including Plaintiffs' potential lenders and others who may be in a position of evaluating Plaintiffs' creditworthiness, credit standing, credit capacity, character and general reputation. This false and derogatory information was, at all relevant times, reported by Equifax to said third parties by a "consumer report" as that term is defined in the FCRA.

106.    On or about August 19, 2009, Plaintiffs notified Equifax that the information being reported on their credit file was false.

107.    Equifax conducted an investigate and deleted the disputed information.

108.    At some point thereafter, Equifax reinserted the disputed and previously deleted information.

109.    In reinserting the disputed and previously deleted information, Equifax failed to comply with the requirements of 15 U.S.C. 1681i(a)5)(B), including the required written notice of

the reinsertion which must be given to the consumer not later than 5 days after the reinsertion.

110.   As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit; mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

111.   Equifax's acts and/or omissions made in violation of the FCRA were willful, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. §1681n.

112.   Equifax's acts and/or omissions made in violation of the FCRA were negligently made, entitling the Plaintiffs to recover the remedies provided pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant Equifax for negligent and willful violations of the FCRA and award Plaintiffs actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.


**PLAINTIFFS DEMAND TRIAL BY JURY ON EACH AND EVERY CLAIM ASSERTED HEREIN"**

KENNETH J. RIEMER  (RIEMK8712)
Attorney for Plaintiffs
P. O. Box 1206
Mobile, AL 36633
Telephone: 251-432-9212
Fax: 251-433-7172
E-mail: kjr@alaconsumerlaw.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

KENNETH J. RIEMER  (RIEMK8712)

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

Assurant, Inc.
c/o CSC Lawyers Incorporating Svc, Inc.
150 South Perry Street
Mongomery, AL 36104

TrackSure Insurance Agency, Inc.
c/o CSC Lawyers Incorporating Svc, Inc.
150 South Perry Street
Mongomery, AL 36104

Experian Information Solutions, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Equifax Credit Information Services, Inc.
c/o Kent E. Mast, Reg. Agent
1550 Peachtree Street NW
Atlanta, GA 30309

Transunion, LLC
P. O. Box 2000
Chester, PA 19022-2000