IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDWARD AGOSTINELLI, *et al.*,  :
           :
  Plaintiffs,    :
           :
VS.         : CIVIL ACTION NO. 10-00294-CG-B
           :
FIFTH THIRD BANK, *et al.*,  :
           :
  Defendants.   :

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant TrackSure Insurance Agency's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 34), Defendant Assurant, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 36), and Defendants TrackSure Insurance Agency and Assurant, Inc.'s Joint Motion to Stay or, in the Alternative to Dismiss Defendant Fifth Third Bank's Cross-claim or Motion for a More Definite Statement (Doc. 67). Based upon a careful review of the above-referenced motions, supporting briefs, briefs in opposition, and the case file, the undersigned RECOMMENDS that the motions be denied.

## I. Background

Plaintiffs Edward and JoAnn Agostinelli filed the instant action against Defendant Fifth Third Bank in the Circuit Court of Baldwin County on February 10, 2010. (Doc. 1). Defendant Fifth Third Bank ("FTB") removed the case to federal court in June 2010 on the basis of diversity of citizenship. (Id.) In their original Complaint, Plaintiffs allege that they obtained a

mortgage loan through FTB for property located in Alabama. According to Plaintiffs, in addition to the monthly principal and interest payments, they were also required to pay to FTB at closing the initial flood insurance premiums covering the first year, and to thereafter make monthly escrow payments for taxes and insurance. In turn, FTB was responsible for paying the taxes and insurance with the funds collected from Plaintiffs. Plaintiffs allege that FTB failed to pay the flood insurance premium for the 2007-2008 policy, and as a result, the policy lapsed. Plaintiffs further allege that after notice of the lapse, they reached an agreement with FTB which provided that the escrow account would be cancelled, and that Plaintiffs would instead tender the insurance premiums directly to the insurance company. According to Plaintiffs, notwithstanding the agreement, FTB placed forced flood insurance on their property, and then proceeded to collect from Plaintiffs amounts which were not due. Plaintiffs allege that FTB has repeatedly held them in default when, in truth, Plaintiffs have at all times complied fully with the terms of their mortgage. Plaintiffs further allege that FTB wrongfully initiated non-judicial foreclosure proceedings against them. (Doc. 1, Ex. A).

On October 21, 2010, Plaintiffs amended their Complaint to assert additional claims and to add additional defendants. In the Amended Complaint, Plaintiffs added TrackSure Insurance,

Inc., a division of Assurant, Inc., Equifax Information Services, LLC, Experian Information Solutions and Transunion, LLC. Plaintiffs reallege many of the factual allegations contained in their original Complaint, and also allege that TrackSure and Assurant both conducted business in Alabama and are collectively referenced in the Amended Complaint as "Assurant". According to Plaintiffs, FTB contracted with Assurant to assure that timely insurance payments are made and Assurant failed to pay for the forced-placed insurance out of monies that Plaintiffs had already paid to FTB and that FTB and Assurant wrongfully placed forced insurance on Plaintiffs' property, and thereby caused Plaintiffs' account with FTB to be deemed delinquent.

Specifically, Plaintiffs have asserted the following claims against FTB: breach of mortgage agreement, breach of fiduciary duty, negligence, wantonness, wrongful foreclosure, defamation, violation of the FCRA, and violation of RESPA, 12 U.S.C. § 2605(g)(e)(f). With respect to Defendants TrackSure Insurance Agency ("TrackSure") and Assurant, Inc. ("Assurant")[1], Plaintiffs have asserted negligence and wantonness claims. (Doc. 23 at 10-

---

[1] Plaintiffs assert that TrackSure is a corporation organized and existing under the laws of California, with its principal place of business in California, and Assurant is a corporation organized and existing under the laws of New York, with its principal place of business in New York. According to Plaintiffs, TrackSure is a division of Assurant. (Doc. 23 at 3).

12). Plaintiffs also allege that Defendants Experian, Transunion and Equifax violated the Fair Credit Reporting Act.

On November 16, 2010, Defendants TrackSure and Assurant filed the Motions to Dismiss Plaintiffs' claims. (Docs. 34-37). In their motions, TrackSure and Assurant argue that Plaintiffs' claims against them should be dismissed under Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim upon which relief can be granted (Docs. 35, 37).

On November 23, 2010, Defendant FTB filed an Amended Answer to Plaintiffs' Amended Complaint and asserted a Counter-claim against Plaintiffs and a Cross-claim against Defendants TrackSure and Assurant. (Doc. 49). In the Counter-claim, FTB alleges that Plaintiffs breached the mortgage agreement, that Plaintiffs are liable for monies due on the account, and that Plaintiff' are liable for unjust enrichment.  In the Cross-claim, FTB asserts claims against Defendants TrackSure and Assurant for breach of contract, negligence, indemnity pursuant to contract and indemnity pursuant to common law and equity. (Id.)

Defendants TrackSure and Assurant filed, on January 5, 2011, a Joint Motion to Stay or, in the Alternative to Dismiss Fifth Third's Cross-Claim or Order for a More Definite Statement. (Doc. 67). In their motion, TrackSure and Assurant argue that they are "at a disadvantage in how to respond to the Cross-claim

filed by Fifth Third" until their motions seeking the dismissal of Plaintiffs' claims are resolved. (Id. at 2-3). TrackSure and Assurant also argue that FSB's negligence claim is barred by the statute of limitations, and fails to state a claim upon which relief can be granted. In the alternative, TrackSure and Assurant request that, at a minimum, FTB be directed to plead more specifically a cause of action under Alabama law. (Id. at 3-6).

## II. **Analysis**

### A. **Standard of Review**

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Wilchobe v. TeeVee Toons, Inc., 555 F. 3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 55. "[A] formulaic recitation of the elements of a cause of action will not do[.]" Id. Rule 12(b)(6)

does not however "impose a probability requirement at the pleading stage." It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the elements plausible. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (llth Cir. 2007)("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.")(quoting <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. at 1965).

### B. <u>Discussion</u>

#### 1. <u>Defendant TrackSure 's Motion to Dismiss Complaint</u>

##### a. Relationship between TrackSure and Assurant

In its motion, TrackSure alleges that Plaintiffs have improperly lumped TrackSure with Assurant, and have failed to set forth sufficient facts which establish a legal duty owed by TrackSure to Plaintiffs.  TrackSure also alleges that it is prejudiced by the amendment because of the short time remaining in the original discovery schedule[2]. (Doc 35). Turning first to TrackSure's claim that Plaintiffs have improperly lumped TrackSure with Assurant, the undersigned notes that in the style

---

[2] TrackSure has also argued that personal jurisdiction is lacking.  A searching review of TrackSure's motion reflects no discussion or development of this argument. Accordingly, this argument is deemed abandoned.

of the Complaint, Plaintiffs list TrackSure as "a division of Assurant, Inc.," however, in the body of the Complaint, Plaintiffs allege that TrackSure is incorporated in California and has its principal place of business in California, while Assurant, Inc. is incorporated in New York and has its principal place of business in New York. Plaintiff also alleges that both companies conduct business in Baldwin County, and that for purposes of the Complaint, they are collectively referenced as "Assurant." Moreover, in paragraph 13 of Plaintiffs' Complaint, they allege that FTB contracted with these Defendants to assure timely payments are made for insurance premiums for flood policies which FTB's mortgagors are required to maintain on their properties, and that FTB has alleged that the failure to pay the required insurance premiums on Plaintiffs' property was at least, in part, the fault of these Defendants.

As a general rule, in Alabama, "a parent corporation is a distinct entity from its subsidiary and is not liable for the acts of its subsidiary unless it is a mere adjunct, instrumentality, or alter ego of the parent corporation." Whatley v. Merit Distrib. Servs., 2001 U.S. Dist. LEXIS 2744, *8 (S.D. Ala. Feb. 5, 2001); see also Ford v. Carylon Corp., Inc., 937 So.2d 491, 498 (Ala. 2006) ("A parent corporation generally cannot be held liable for the acts of its subsidiary unless the

latter's corporate veil can be pierced as a result of the parent's abuse of control.").

Based on the record before the Court, the relationship between TrackSure and Assurant, Inc. is not clear; however, this is not fatal because both are alleged to have been responsible for securing the flood insurance, and to be at fault for the failure to secure the insurance. TrackSure has not alleged nor offered any evidence that it does not conduct business in Baldwin County, or that it was not responsible for securing the flood insurance on Plaintiffs' property. Thus, its contention that it has been improperly lumped with Assurant is without merit.

### b. Negligence and wantonness claims

TrackSure also argues that Plaintiffs have failed to plead facts sufficient to assert a claim for which relief can be granted because Plaintiff's single factual allegation against it is based on purse hearsay. Defendant further asserts that neither it nor Assurant is a party to the mortgage contract between Plaintiffs and FTB; thus, Plaintiffs have no legal standing to sue because they have not pled a legally cognizable claim arising under a "contractual relationship." (Doc. 35 at 6). Defendants' contention, however, is misguided. Nowhere in Plaintiffs' Amended Complaint do they allege a breach of contract claim against Defendants; rather, Plaintiffs assert

claims for negligence and wantonness, both of which sound in tort. Moreover, Defendants fail to explain how the lack of contractual privity between Plaintiffs and TrackSure/Assurant would deprive them of standing to pursue their tort claims related to the management of Plaintiffs' flood insurance premiums. In fact, in the Joint Reply, TrackSure acknowledges that Plaintiffs claims sound in tort, but incorrectly contend that the Alabama Supreme Court has not recognized such liability. In Cincinnati Ins. Co. v. Barber Insulation, Inc., 946 So. 2d 441 (Ala. 2006), the Alabama Supreme Court recognized that:

> "Although plaintiff may be barred from recovering from Defendant as a third party beneficiary to Defendant's contract with another, plaintiff may nevertheless recover in negligence in defendant's breach of duty where defendant negligently performs his contract with knowledge that others are *relying* on proper performance and the resulting harm is reasonably foreseeable. Providence Hospital, 454 So. 2d at 501(quoting Federal Mogual Corp. v. Universal Constr. Co., 376 So. 2d 716, 721 (Ala. Civ. App. 1979)(emphasis added)....

946 So. 2d at 446-447. See also Temploy, Inc. v. Nat'l Council on Compensation Ins., 650 F. Supp. 2d 1145, 1153 (S.D. Ala. 2009) (under Alabama law, "when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the

breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable"); QORE, Inc. v. Bradford Building Company, Inc., 25 So.3d 1116, 1124-25 (Ala. 2009)("Even when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.")(citation omitted).  These cases make clear that lack of contractual privity is not a sufficient basis upon which to deny  claims for negligence and wantonness.  Accordingly, TrackSure's argument must be rejected.

Defendants next assert that under Alabama law, no legal duty is owed by the third party entity retained by a bank to "force place" flood insurance as it relates to borrowers.  In support of its assertion, Defendants cite Custer v. Homeside Lending Inc., 858 So. 2d 233 (Ala. 2003), wherein the Alabama Supreme Court analyzed the National Flood Insurance Act, 42 U.S.C. § 4001 et seq.[3].  Defendants' reliance on Custer is

---

[3] The National Flood Insurance Act, 42 U.S.C. § 4001 et seq., requires regulated lenders of mortgage real-estate loans to determine if the borrower's property is located in a special
(Continued)

misplaced.  <u>Custer</u> involved borrowers who sued their mortgage lender and the company that serviced the loan on the ground that the defendants had improperly obtained force place flood insurance in amounts which exceeded the plaintiffs' loan balance.  The plaintiffs did not contest the servicing company's motion for summary judgment, but appealed the trial court's finding that the plaintiffs were not third party beneficiaries of the servicing contract between the mortgage company and the servicing company.   In rejecting the plaintiffs' claim on appeal, the Alabama Supreme Court found that the plaintiffs failed to explain how the servicing agreement was breached, and failed to establish any intent to benefit them; thus, they were not third party beneficiaries. <u>Id.</u> at  249.

Custer is wholly inapplicable to this case because Plaintiffs are not contending that they are third party beneficiaries of the agreement between FTB and TrackSure. Instead, Plaintiffs contend that TrackSure was negligent and acted with wantonness in not obtaining the flood insurance for Plaintiffs' property.  As noted supra, "even when a third party is not in privity with the parties to a contract and is not a

---

flood-hazard area and, if so, to notify the borrower that he must obtain an appropriate amount of flood insurance. 42 U.S.C. § 4012a(e)(1); <u>Wentwood Woodside I, L.P. v. GMAC Commer. Mortg. Corp.</u>, 2004 U.S. Dist. LEXIS 20093 (S.D. Tex. Aug. 31, 2004).

third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by the contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable." Temploy, Inc., 650 F. Supp. 2d 1145, 1153 (S.D. Ala. 2009)(citations omitted).

Duty and breach of duty are fundamental elements of a negligence cause of action in Alabama. See S.B. v. Saint James School, 959 So.2d 72, 97 (Ala. 2006)(to state a negligence claim under Alabama law, the plaintiff must prove duty to a foreseeable plaintiff, breach of that duty, proximate causation and damage or injury); DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So.2d 454, 460 (Ala. 2008); Kanellis v. Pacific Indem. Co., 917 So.2d 149, 155 (Ala. Civ. App. 2005). "The existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened... The key factor is whether the injury was foreseeable by the defendants." Pritchett v. ICN Medical Alliance, Inc., 938 So.2d 933, 937 (Ala. 2006) (quotations omitted). Wantonness involves the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to

do an act, injury will likely or probably result." <u>Alfa Mut.</u>
<u>Ins. Co. v.</u> <u>Roush</u>, 723 So.2d 1250, 1256 (Ala. 1998)(citations
omitted); <u>Temploy</u>, 650 F. Supp. 2d at 1154.

In their Amended Complaint, Plaintiffs allege that FTB
contracted with TrackSure and Assurant to ensure that timely
payments are made for insurance premiums for flood policies for
borrowers such as Plaintiffs, and that FTB has asserted that the
failure to pay the premium on Plaintiffs' property was at least,
in part, the fault of TrackSure and Assurant, and that if true,
these Defendants are jointly and severally liable to Plaintiffs
for damages caused by the failure to pay the premiums.  While
TrackSure argues that Plaintiffs have failed to allege that it
owed a duty to Plaintiffs, the gist of Plaintiffs' Complaint is
that TrackSure did in fact assume such a duty when it entered
into the contract with FTB.  The undersigned finds that while
Plaintiffs' allegations are far from eloquently pleaded, they
are adequately pled as required by Rule 8 and <u>Twombly</u> at this
stage of the proceedings.  Taking Plaintiffs' factual
allegations as true, they have sufficiently alleged a duty
undertaken by TrackSure so as to give rise to the negligent and
wantonness claims.  If, as Plaintiffs allege, TrackSure agreed,
and then failed to pay the premiums out of Plaintiffs' escrow
account for the mandatory flood insurance, then it was entirely
foreseeable that harm would befall the Plaintiffs if TrackSure

failed in its undertaking. Accordingly, TrackSure's motion to dismiss Plaintiffs' claims is due to be denied[4]. See <u>Marks v. Quicken Loans, Inc., et al</u>., 561 F. Supp. 2d 1259 (S.D. Ala. 2008)("Under the straightforward application of the Alabama legal test for duty, then, the Court finds that plaintiffs have adequately alleged facts showing the nature of Quicken's activities, the relationship between Quicken and plaintiffs (and plaintiffs' dependence on Quicken to manage escrow payments in a responsible and diligent manner), and foreseeability of harm

---

[4] TrackSure's assertion that it will be prejudiced because discovery had already commenced by the time it was joined in this action is without merit because discovery has been stayed until resolution of the pending motions to dismiss. A revised scheduling order will issue upon resolution of these motions. <u>See</u> (Doc. 43).

Likewise without merit is TrackSure's assertion that Plaintiffs' Complaint is improperly based on "hearsay" deposition testimony from one of FTB's representatives and that Plaintiffs improperly failed to attach the referenced deposition transcript to the Amended Complaint. Defendant cites no authority in support of its assertions, nor is the Court aware of any. As noted supra, at this stage, factual allegations in the complaint are taken as true and are construed in the light most favorable to the plaintiffs. Simply put, there is no requirement to "prove" ultimate facts or "produce" an evidentiary foundation in order to survive a Rule 12(b)(6) attack. See <u>Mortensen v. Mortgage Elec. Registration Sys</u>., 2010 U.S. Dist LEXIS 87756, *7-8 (S.D. Ala. Aug. 23, 2010); <u>Traffic Jam Events, LLC v. Cortes</u>, 2009 U.S. Dist. LEXIS 36250 (M.D. Fla. April 17, 2009)(noting there is no requirement to attach certain documents to the complaint or to pled the details of an agreement); <u>United States ex rel. Chabot v. MLU Servs.</u>, 544 F. Supp. 2d 1326, 1329 (M.D. Fla. 2008)("Nothing in the federal rules of civil procedure requires Plaintiff to attach any document to the complaint.") (citation omitted).

that would support the existence of a duty of care by
Quicken.").

### 2. **Defendant Assurant's Motion to Dismiss Complaint**

In Defendant Assurant's Motion to Dismiss, it makes the
same arguments as Defendant TrackSure, and further argues that
personal jurisdiction is lacking. According to Assurant, as an
indirect parent of TrackSure, the Alabama long arm statute
cannot provide Plaintiffs the means to hale it into court, and
Plaintiffs have failed to allege a theory of alter ego
liability.  In response, Plaintiffs argue that the Amended
Complaint alleges that Assurant and TrackSure do business in
Baldwin County, Alabama, and that they are involved in the
maintenance of insurance coverage for real estate in Alabama.

As noted supra, Alabama law holds that a parent corporation
is generally a distinct entity from its subsidiary and is not
liable for the acts of its subsidiary.  See Whatley, 2001 U.S.
Dist. LEXIS 2744 at *8. Jurisdiction is not acquired over a
parent company in Alabama merely because it owns a subsidiary
which does business in Alabama. Where the "'subsidiary's
presence in the state is primarily for the purpose of carrying
on its own business and the subsidiary has preserved some
semblance of independence from the parent, jurisdiction over the
parent may not be acquired on the basis of the local activities
of the subsidiary.'" Meier v. Sun Int'l Hotels, Ltd., 288 F.3d

1264, 1272 n.11 (11th Cir. 2002) (quoting <u>Consolidated Dev.</u>
<u>Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286 (11th Cir. 2000)). Rather,
in order to claim jurisdiction over the parent based on the
activities of the subsidiary, the plaintiff would have to show
that the parent company's existence was "formal only and without
any semblance of individual identity." <u>Meier</u>, 288 F.3d at 1272.

    The plaintiff has the burden of establishing a prima facie
case of personal jurisdiction over a nonresident defendant.
<u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1268 (11th Cir.
2002). "Plaintiff's burden in alleging personal jurisdiction is
to plead sufficient material facts to establish the basis for
exercise of such jurisdiction." <u>Future Tech. Today, Inc. v. OSF</u>
<u>Healthcare Sys., Inc.</u>, 218 F.3d 1247, 1249 (11th Cir. 2000). "A
federal district court sitting in diversity may exercise
personal jurisdiction to the extent authorized by the law of the
state in which it sits and to the extent allowed under the
Constitution." <u>Meier</u>, 288 F.3d at 1269.

    The Eleventh Circuit has stressed that when a district
court does not conduct a discretionary hearing on a motion to
dismiss for lack of personal jurisdiction:

>    the plaintiff must establish a prima facie case
>    of personal jurisdiction over a nonresident
>    defendant... "A prima facie case is established
>    if the plaintiff presents enough evidence to
>    withstand a motion for directed verdict."... The
>    district court must accept the facts alleged
>    in the complaint as true, to the extent they
>    are uncontroverted by the defendant's affidavits
>    ...Where the parties' affidavit and deposition
>    evidence conflict, the court must construe all

reasonable inferences in favor of the plaintiff."

Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (internal citations omitted).

In a diversity action, the court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. v. Mazer, 556 F. 3d. 1260, 1274 (2009). Because Alabama's long-arm provision, Rule 4.2(a) of the Alabama Rules of Civil Procedure, is coextensive with due process requirements, see Alabama Waterproofing Co. v. Hanby, 431 So. 2d 141, 145 (Ala. 1983), the court need only consider whether the exercise of jurisdiction satisfies the requirements of due process. Olivier v. Merritt Dredging Co., 979 F.2d 827, 830 (11th Cir. 1992). Due process requires both that the defendant have "certain minimum contacts" with the forum state, and if such minimum contacts exist, that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." Burnham v. Superior Court of Calif., 495 U.S. 604, 618, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95(1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign."

Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1545 (11th Cir. 1993).

There are two types of personal jurisdiction: "general" and "specific."  General personal jurisdiction is established when "the cause of action does not arise out of ... [the party's] activities in the forum State," but where there are "continuous and systematic" contacts between the two.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 n.3 (11th Cir. 2007)("general jurisdiction ... can only be exercised if the defendant has 'continuous and systematic' contacts with the forum"); Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F. 3d 1357, 1360 n.3 (11th Cir. 2006)("General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated.")

Specific jurisdiction is based on the party's contacts with the forum State that are related to the cause of action. Helicopteros, 466 U.S. at 414 at n.8. For specific personal jurisdiction, the contacts at issue must satisfy the minimum-contacts test. "Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum

state must be such that [it] reasonably anticipate being haled into court there." Sculptchair, Inc. v. Century Arts, Ltd., 94 F. 3d 623, 631 (llth Cir. 1996) (citation omitted).

Based upon the record before the Court, the undersigned finds that Plaintiffs have established a prima facie case of specific personal jurisdiction over Assurant, and Assurant has failed to come forth with any evidence controverting Plaintiffs' allegations.  In the Amended Complaint, Plaintiffs alleged that Assurant and TrackSure conduct business in Alabama, and that they entered into an agreement with FTB to obtain flood insurance for Plaintiffs' property in Alabama, but failed to do so.  In the face of these allegations, Assurant has produced no evidence suggesting that they do not conduct any business in Alabama, or controverting Plaintiffs' allegations. Accordingly, in the absence of such, Assurant's conclusory assertion that it is not subject to the jurisdiction of this Court must be rejected. In addition, for the reasons set forth in the Court's prior discussion of TrackSure's Motion to Dismiss, Assurant's remaining arguments must likewise be rejected.

### 3. Assurant and TrackSure's Motion to Stay, or in the Alternative, Dismiss Cross-Claim or Order a More Definite Statement.

In Assurant and TrackSure's Motion, they argue that FTB's cross-claim should be stayed because the cross-claim does not detail what these Defendants are alleged to have done, and does

not include a copy of the contract nor cite to specific language in the contract. Defendant also appear to argue that they should not have to respond to FTB's cross-claim until their motions to dismiss Plaintiffs' claims are resolved. In the alternative, Defendants argue that FTB's negligence claim should be dismissed because it is barred by the statute of limitations, and that FTB's indemnity claims failed to state a claim. Additionally, FTBS argues that FTB should be required to file a more definitive statement because its allegations are conclusory and not sufficiently plead. Upon consideration of Defendant's arguments, FTB's response in opposition, and the case file, the undersigned finds that Assurant and TrackSure's motion is due to be denied.

### a. Sufficiency of allegations

Turning first to Assurant and TrackSure's assertion that FTB's cross-claim does not detail what these Defendants are alleged to have done, and that FTB has failed to attach a copy of the agreement or cite to the agreement, the undersigned is unaware of any authority which requires that a copy of the agreement be attached to the cross-claim. See Traffic Jam Events, LLC v. Cortes, 2009 U.S. Dist. LEXIS 36250 (M.D. Fla. April 17, 2009)(noting there is no requirement to attach certain documents to the complaint or to pled the details of an agreement); United States ex rel. Chabot v. MLU Servs., 544 F.

Supp. 2d 1326, 1329 (M.D. Fla. 2008)("Nothing in the federal rules of civil procedure requires Plaintiff to attach any document to the complaint.)

Moreover, FTB has sufficiently stated facts in support of its claims against Assurant and TrackSure.  In the cross-claim, FTB alleges that it entered into a contractual relationship with these Defendants pursuant to the "TrackSure Tracking and Services Agreement," that pursuant to the agreement, these Defendants were responsible for issuing notices and placing coverage under FTB's master policy, including accounts in the state of Alabama, and were also responsible for paying the insurance premium for flood insurance on Plaintiffs' property, or notifying FTB of the lapse of the insurance, that FTB relied on these Defendants to fulfillment their obligations under the contract, that these Defendants failed to pay the premium and/or notify FTB of the lapse, which in turn resulted in FTB force placing flood insurance on Plaintiffs' property and in efforts to foreclose on the property, and that, FTB was harmed as a result. These factual assertions provide adequate notice to Defendants of the duties that they are alleged to have undertaken and breached.  Accordingly, it is recommended that Defendants' motion to stay be denied.

### b. Statute of Limitations

In the alternative, Defendants allege that FTB's negligence claim should be dismissed because it is barred by the statute of limitations. FTB counters that some of the acts/ omissions complained of were recurrent in nature, and discovery is needed in order to determine the exact dates of any breaches. The parties are in agreement that FTB's negligence claims against Defendants are subject to a two-year limitations period. See Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); Abrams v. Ciba Specialty Chems. Corp., 666 F. Supp. 2d 1267, 1271 (S.D. Ala. 2009)(applying Alabama law and determining that "[t]he applicable limitations period for the negligence ... claims is two years").

Whether the statute of limitations period has run depends on when the cause of action accrued. "[A] cause of action in tort accrues only when actual damage or injury is sustained." Matthews Bros. Const. Co., Inc. v. Stonebrook Dev., L.L.C., 854 So.2d 573, 577 (Ala. Civ. App. 2001). In other words, "[i]f the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first

legal injury occurs that the cause of action accrues and the limitations periods begins to run. Ex parte Floyd, 796 So.2d 303, 308 (Ala. 2001).

Moreover, in this Circuit, the general rule is that dismissal under Rule 12(b)(6), on statute of limitations grounds, "is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." Brotherhood of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008)(citations and internal quotations omitted.); Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 (11th Cir. 2005). In this case, FTB's negligence action may well be time-barred; however, at this juncture, it is not clear when the alleged injury to FTB occurred. As noted supra, Plaintiffs have alleged that Defendants failed to pay the premium for the 2007-2008 flood policy and that the policy lapsed as a result, that notwithstanding an agreement reached with FTB for the elimination of the escrow for flood insurance, flood insurance was force placed on Plaintiffs' property which resulted in their account being deemed in default and in foreclosure efforts being instituted in March 2010. FTB alleges that Defendants were responsible for paying the premium or notifying them of the lapse. At this juncture, it is not clear whether FTB's alleged injury occurred when the premium was not paid for the 2007-2008

flood policy and FTB was not notified of the lapse, when FTB force placed the flood insurance on Plaintiffs' property, or when FTB declared Plaintiffs' account in default and sought to foreclose.  Accordingly, because it is not apparent on the face of the pleadings that FTB's negligence is time-barred, the undersigned recommends that Defendants' motion be denied as premature at this juncture. See McMillian v. AMC Mortgage Svcs., Inc., 560 F. Supp. 2d 1210, 1213 (S.D. Ala. 2008) ("A statute of limitations defense is generally not appropriate for evaluation on a Motion to Dismiss filed pursuant [to] Rule 12(b)(6), Fed.R.Civ.P.").

### c.   Appropriateness of negligence claim

Defendants further contend that the negligence count should be dismissed because it simply alleges a tortious breach of contract, which according to Defendants, is not cognizable under Alabama law. Defendants are correct that the general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort. See, e.g., Barber v. Business Prods. Ctr., Inc., 677 So. 2d 223, 228 (Ala. 1996)(providing that "a mere failure to perform a contractual obligation is not a tort"); Sims v. Etowah County Bd. of Ed., 337 So.2d 1310, 1313 (Ala. 1976) (same).  However, there are recognized exceptions to the rule that failure to perform under a contract will not give rise to an action in

tort. See, e.g., Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1295 (S.D. Ala. 2002). In fact, the Eleventh Circuit has construed Alabama law as providing that "it is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract." Brown-Marx Associates Ltd. v. Emigrant Sav. Bank, 703 F.2d 1361, 1371 (11th Cir. 1983) (distinguishing between claims for breach of an obligation expressly set forth in the contract (which are not actionable in tort under Alabama law) and claim for breach of a duty implied by or arising out of the contract (which may be actionable in tort)).

In this case, FTB alleges that Defendants' actions constituted a breach of their obligations under the parties' agreement, and also a failure to adhere to reasonable and customary origination practices of prudent insurance tracking and servicing institutions. (Doc. 49). On their face, these allegations appear to be based not only on the parties' agreement, but also on an alleged duty implied by or arising out of the agreement. Accordingly, at this juncture, where the record has not been developed and it is unclear whether FTB's negligence claim is in actuality a contract claim merely masquerading as a negligence claim, or is a negligence claim that comes within the exceptions recognized under Alabama law, the undersigned recommends that Defendants' motions be denied.

**d. indemnity claim**

Defendants also contend that to the extent FTB is claiming that it is entitled to contribution from Defendants, there is no such claim in Alabama.  Aside from asserting that common law indemnity does not exist in Alabama, Defendants have proffered no additional support for the dismissal of this claim.  As a general rule, there is no right of indemnity or contribution among joint tortfeasors under Alabama law. Coates v. CTB, Inc., 173 F. Supp. 2d 1200, 1203 (M.D. Ala. 2001); Crigler v. Salac, 438 So. 2d 1375, 1385 (Ala. 1983); Kennedy Engine v. Dog River Marina & Boatworks, Inc., 432 So. 2d 1214, 1215 (Ala. 1983) ("Alabama law does not recognize actions for indemnity or contribution from joint tortfeasors."). However, a well-recognized exception exists which entitles a joint tortfeasor to indemnity where he has not been guilty of any fault, except technical or constructive, or where both parties are at fault, but the fault of the party from whom indemnity is sought was the proximate or primary cause of the injury. Coates, 173 Supp. 2d at 1203; Crigler, 438 So. 2d 1375. In this action, FTB denies that it caused any injury to Plaintiffs, and contends that to the extent Plaintiffs have been injured, the damages resulted from the actions of Defendants, and that FTB is entitled to seek indemnification under both Alabama common law, and the parties'

agreement.    Nothwithstanding  Defendants'  assertions   to   the
contrary, Alabama law does recognize common law indemnity, and
FTB  has  plead  facts  sufficient  to  state  such  a  claim.
Accordingly,  the  undersigned  recommends  that  Defendants'  motion
to dismiss FTB's common law indemnification claim be denied[5].

### e. Request for more definite statement

Finally,  Defendants  request  that  FTB  be  required  to  plead
its  claims  with  more  specificity,  specifically  with  a  more
definite  statement  of  claims,  factual  support,  and  citations  to
contract  provisions.  Federal  Rule  of  Civil  Procedure  12(e)
permits  a  party  to  "move  for  a  more  definite  statement  of  a
pleading  to  which  a  responsive  pleading  is  allowed  but  which  is
so  vague  or  ambiguous  that  the  party  cannot  reasonably  prepare  a
response."  Fed.  R.  Civ.  P.  12(e);  see  also  Fathom  Exploration,
LLC  v.  The  Unidentified  Shipwrecked  Vessel  or  Vessels,  352  F.
Supp.  2d  1218,  1221  (S.D.  Ala.  2005)("A  motion  for  a  more

---

[5] Although  this  issue  has  not  been  fully  addressed  by  the  parties,
the  undersigned  notes,  in  passing,  that  FTB  has  asserted  claims
for  both  common  law  indemnity  as  well  as  contractual  indemnity.
However,  a  clear  majority  of  courts  have  found  that  a  party  is
proscribed  from  recovering  on  an  implied  indemnity  theory  where
the  parties  executed  an  express  written  indemnity  agreement.  See
RBC  Bank  (USA)  v.  Holiday  Isle,  LLC,  2010  U.S.  Dist.  LEXIS  9800
(S.D.  Ala.  Feb.  4,  2010)(parties'  rights  to  common  law  indemnity
are  cut  off  where  those  parties  enter  into  an  express  indemnity
agreement,  through  which  they  themselves  delineate  when  and
under  what  circumstances  an  indemnification  obligation  will
arise).

definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.") (quotation omitted). Rule 12(e) is part of the "district court's case-management arsenal." Twombly, 550 U.S. at 593 n.13 (discussing some of the case-management tools afforded to district courts by the Federal Rules of Civil Procedure). A motion for more definite statement "'is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail.'" Abrams v. Ciba Specialty Chems. Corp., 2008 U.S. Dist. LEXIS 68897 at *14. "[A] motion for a more definite statement must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit the filing of a responsive answer." Id. at *14-15. Most significantly, Rules 8 and 12 are not a substitute for discovery.[6] See id. at *14.

---

[6] See Twombly, 127 S.Ct. at 1965 (pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary element); see generally Boldstar Tech., LLC v. Home Depot, Inc., 517 F Supp. 2d 1283, 1291 (S.D. Fla. 2007) ("allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement") (citation omitted); New Lenox Indus., Inc. v. Fenton, 510 F. Supp.2d 893, 911 (M.D. Fla. 2007) ("to the extent that the Defendants need to obtain additional information to defend themselves at trial discovery is the avenue to pursue").

Contrary to Defendants' suggestion, a reader of the cross-claim "is not left guessing ... as to how [FTB] was wronged, what [TrackSure and Assurant] are alleged to have done, how [FTB] contends that [TrackSure and Assurant] are liable for those acts and omissions, or how the factual allegations are possibly material to the particular causes of action asserted." Garrett v. Stanton, 2008 WL 4701215, *7 (S.D. Ala. Oct. 22, 2008). The cross-claim contains "a short and plain statement" of FTB's claim as required by Rule 8. See Fed. R. Civ. P. 8(a)(2). The discovery process will permit Defendants to "ferret out additional detail concerning [FTB's] legal theories in a timely and efficient manner." Id.; see also Abrams v. Ciba Specialty Chems. Corp., 2008 U.S. Dist. LEXIS 68897 at *25 (observing that the nuances of the facts supporting each plaintiff's claims should be explored via the discovery process and not the Rule 12(e) mechanism).

The cross-claim is not so vague or ambiguous that it would defy Defendants' efforts in good faith to respond without prejudicing themselves. Consequently, it is recommended that Defendants' motion for more definite statement be denied.

## III. Conclusion

For the reasons discussed herein, the undersigned RECOMMENDS that Defendant TrackSure Insurance Agency's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 34), Defendant Assurant,

Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 36), and Defendants TrackSure Insurance Agency and Assurant, Inc.'s Joint Motion to Stay or, in the Alternative to Dismiss Defendant Fifth Third Bank's Cross-claim or Motion for a More Definite Statement (Doc. 67) be DENIED.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **10th** day of **May, 2011.**


                              _____/s/ Sonja F. Bivins_____
                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                      **/s/ SONJA F. BIVINS_____**
                    **UNITED STATES MAGISTRATE JUDGE**