IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD AND JOANN AGOSTINELLI, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FIFTH THIRD BANK, FIFTH THIRD MORTGAGE COMPANY, TRACKSURE INSURANCE AGENCY, INC., A DIVISION OF ASSURANT, INC.; EQUIFAX INFORMATION SERVICES, INC.; EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANSUNION, LLC, | ) CIVIL ACTION NO. CV-10-294-CG-B |
| | ) |
| Defendants. | ) |

**TRACKSURE INSURANCE AGENCY, INC.'S MOTION TO COMPEL ARBITRATION, MOTION TO STAY, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW defendant TrackSure Insurance Agency, Inc. ("TrackSure") and hereby files this motion to compel arbitration of the issues addressed in the Cross Claims brought by Fifth Third Bank ("FTB"), and further seeks that these proceedings be stayed pending the outcome of the arbitration, preserving its defenses under Fed.R.Civ.P., Rule 12(b). For the following reasons, TrackSure's motion is due to be granted:

**I. FACTUAL BACKGROUND**

This matter arises from an Amended Complaint filed by the Plaintiffs asserting that TrackSure was jointly and severally liable to Plaintiffs for the acts or omissions arising out of a contractual relationship between TrackSure and FTB. [Doc. 23]. Plaintiffs allege that they obtained a mortgage loan from FTB on or about June 6, 2007, and that FTB failed to pay flood insurance premiums on their property "[a]t the outset of the loan." Amended Complaint, paras. 9 and 10. In response to Plaintiffs' Amended Complaint, FTB filed an Amended Answer,

Counterclaim and Cross Claim, and asserted, generally, that TrackSure was liable to FTB under an agreement between them entered into to for the purposes of "issuing notices and placing coverage under Fifth Third's Master Insurance Policy." [Doc. 49].  The Declaration of Ronald K. Wilson is attached hereto as Exhibit 1, and in turn attaches and authenticates an agreement between FTB and TrackSure's predecessor-in-interest, Safeco Select Insurance Services (Exhibit 1-A) effective April 3, 1997, and a subsequent agreement between FTB and TrackSure effective August 1, 2007 (Exhibit 1-B).  Since plaintiffs contend that the event giving rise to its claims against FTB and TrackSure occurred "[a]t the outset" of their loan in June of 2007, it appears that it is the 1997 agreement between FTB and TrackSure's predecessor which set forth their respective contractual duties to each other.

TrackSure believes that it is FTB which failed to perform its obligations under the contractual agreements between them, and therefore denies that it is obligated to indemnify FTB. To the contrary, it is FTB which is obligated to indemnify TrackSure due to its failure to perform its obligations under those agreements.  Further, TrackSure denies that it failed in any respect to perform its own obligations under either of its contracts with FTB.  A dispute has therefore arisen between these two parties "relating to the interpretation or performance of" the 1997 agreement. *See, generally* Exhibit 1.  That agreement contains the following arbitration provision:

> 17. ***Arbitration***:
>
>   a. As a condition precedent to any right of action hereunder, any dispute or difference between SAFECO SELECT and LENDER relating to the interpretation or performance of this Agreement, including its formation or validity, or any transaction under this Agreement, whether arising before or after termination, shall be submitted to arbitration.
>
>   b. Any arbitration pursuant to this Agreement will be conducted by and in accordance with the rules of the American Arbitration Association. Unless otherwise agreed, there shall be a minimum of three arbitrators. The arbitrators shall report their award and the reasons for that award in writing. The award of the arbitrators, or of the

majority of them, shall be final and binding, and judgment upon the award rendered may be entered in any federal or state court having jurisdiction. Any arbitration must be commenced by delivery to the other party of a written demand for arbitration setting forth in detail the claim or controversy to be arbitrated.

Exhibit 1, Declaration of Ronald K. Wilson and Exhibit "A" thereto. Given that the dispute between FTB and TrackSure unquestionably involves and arises out of a dispute relating to the "interpretation or performance of this Agreement, including its formation or validity," the claims brought by FTB against TrackSure cannot be adjudicated by the Court and must be referred to arbitration.

## II. ARGUMENT

Under the facts set forth above, federal law mandates the enforcement of the arbitration provision in the 1997 agreement, prohibiting FTB from proceeding on its claims against TrackSure in this matter. For the following reasons, all of FTB's claims against TrackSure must be submitted to arbitration.

A.   **ARBITRATION AGREEMENTS ARE PRESUMPTIVELY VALID**

The FAA establishes that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Through its passage of the FAA, Congress placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

"[G]eneralized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," *Rodriguez de Quijas v. Shearson/Am.*

*Express, Inc.*, 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.* at 481. Instead, Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the Act, has together created a strong federal policy favoring the enforcement of arbitration agreements. Indeed, these policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). It is against this backdrop of the strong federal policy of encouraging arbitration that the Court must evaluate the merits of TrackSure's motion.

B.  **THE PREREQUISITES UNDER THE FAA FOR ENFORCEMENT OF ARBITRATION AGREEMENTS ARE SATISFIED.**

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Each of these elements is satisfied in this case.

1.  The Parties' Agreement to Arbitrate is in Writing.

As set forth above, it is without question that FTB entered into a written arbitration agreement in April 1997 with the predecessor company to TrackSure "to provide financial institutions with an "Insurance Tracking Service." *See generally* Exhibit 1: Declaration of Ronald K. Wilson, and Exhibit "A" thereto. The contract was executed in April 1997. The arbitration agreement contained in the agreement was in writing, and executed by the parties, or the predecessor-in-interest to these two companies. Thus, the first prerequisite to enforcement of the agreement to arbitrate is undoubtedly satisfied here.

2.         The Transaction Involves or Affects Interstate Commerce.

Obviously, the transactions giving rise to the contracts between these parties involves the servicing of loans across state lines. There should be no dispute that it is now beyond a reasonable presumption that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 573 (1997). *See also*, *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 194, 6 L.Ed.23, 69 (1824). This is particularly true where it is money that is the "article" delivered, transferred, or moved across state lines. *See, e.g., United States v. Owens,* 159 F.3d 221, 226 (6th Cir. 1998); *Staples v. Money Tree, Inc.,* 936 F. Supp. 856, 858 (M.D. Ala. 1996). *See generally, Ford Motor Co. v. Milhollin,* 444 U.S. 555, 559-60 (1980) (discussing "commerce in credit" in connection with the federal Truth-in-Lending Act). This would include the servicing and maintenance of insurance protections for FTB, an Ohio Company, for a mortgage agreement entered into in Alabama.

Regardless, the term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied Bruce Terminix Co.*, 513 U.S. 265, 273 (1995)). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal court.'" *Citizens Bank*, 539 U.S. at 56-57 (citing *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

Furthermore, "commerce" under the FAA is not limited to interstate shipment of goods, but rather includes all contracts relating to interstate commerce, such as loan agreements where "the money-raising activity took place in another state." *Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir. 1986). *Accord, Stiles v. Home Cable Concepts, Inc.,* 994 F. Supp. 1410, 1412-13, 1417 (M.D. Ala. 1998); *Roberson v. Money Tree of Alabama, Inc.,* 954 F. Supp. 1519, 1523 & n.4 (M.D. Ala. 1997); *Masthead MAC Drilling Corp. v. Fleck,* 549 F. Supp. 854, 855 (S.D. N.Y. 1982); *Thompson v. Skipper Real Estate Co.,* 729 So. 2d 287, 290 (Ala. 1999); *Green Tree Financial Corp. v. Lewis,* 813 So. 2d 820 (Ala. 2001).

Given this standard, FTB's insurance tracking and servicing agreement with TrackSure, and its predecessor-in-interest, unquestionably involved and/or affected interstate commerce. To the extent, however, these transactions are not presumed to affect interstate commerce, it should be noted that there is precedent to suggest that if activity is regulated by the federal government by virtue of its plenary powers under the Commerce Clause a nexus between the activity and the arbitration clause exists. *First Family Fin. Serv., Inc. v. Fairley*, 173 F. Supp. 2d 565, 573 (S.D. Miss. 2001). Here, there is a direct federal statute on a mortgage company's responsibilities when it comes to flood insurance, so there can be no doubt that the activity at issue is regulated by federal law, and, therefore, is subject to the Commerce Clause.

3. <u>The Claims In This Action Against TrackSure Are Covered by the Broad Arbitration Agreement.</u>

The arbitration agreement encompasses the claims brought by FTB. When determining the scope of an arbitration provision, the Court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987). Additionally, "due regard must be given to the federal policy favoring arbitration, and

ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The presumption of arbitrability, created by the mere existence of an arbitration clause, is hard to overcome. In fact "it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," and "[d]oubts as to the availability of arbitration must be resolved in favor of arbitration." *IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 726 So. 2d 96, 107 (Miss. 1998) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), and quoting *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)); *see also*, *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Furthermore, in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance. *United Steelworkers v. Warrior & Gulf Navigation Co1.*, 363 U.S. 574, 584-85 (1960).

The arbitration agreement encompasses the claims and allegations in this action. In the 1997 agreement, FTB specifically agreed to arbitrate claims with TrackSure. *See generally* Exhibit 1: Declaration of Ronald K. Wilson, and Exhibit "A" thereto. The mortgage agreement that gave rise to these parties' obligation was entered into on June 6, 2007 during the time the 1997 agreement was still in effect. The claims brought in Plaintiffs' Complaint, and the claims brought in FTB's Cross-Claims against TrackSure, are at least partially grounded in events that took place (or failed to take place) at the time the mortgage was obtained by the Plaintiffs.

To the extent that plaintiffs or FTB allege that any act or failure to act occurred on or after August 1, 2007, it is clear that the loan subject to the matters in dispute was closed in June 2007, or before the August 2007 agreement was entered into. Even if both agreements have some

applicability, arbitration is unquestionably due to be compelled by the 1997 agreement. In any event, the law is clear that arbitrability is a threshold issue for an arbitrator to decide. At least as it relates to Alabama law:

> Challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court [and that] the arbitration clause is enforceable even if the contract as a whole is later found to be void.

*Johnson v. Jefferson County Racing Ass'n.*, 1 So. 3d 960 (Ala. 2008) citing *Paragon Ltd. Inc. v. Boles*, 987 So. 2d 561, 567 (Ala. 2007); s*ee e.*g. *Hardy v. Jim Walter Homes, Inc.*, 2007 U.S. Dist. Lexis 5253, 12-13 (S.D. Ala.) (holding that where claims are directed toward the entire contract, Alabama law requires that an arbitrator, rather than the court, adjudicate and that doubts about the scope of arbitration should be resolved in favor of arbitration).

Here, the parties agreed to arbitrate "any claim or difference…relating to the interpretation or performance of this Agreement, *to include its formation or validity*." <u>Exhibit 1</u>: Declaration of Ronald K. Wilson, and Exhibit "A" thereto (emphasis added). The mortgage at the wellspring of this action was entered into in June 2007 when the 1997 agreement was in effect. There should be no doubt that the claims before the court are covered by the 1997 agreement, and thus, the arbitration clause contained therein.

### THE FAA MANDATES A STAY OF ALL PROCEEDINGS IN THIS COURT BECAUSE A VALID ENFORCEABLE ARBITRATION AGREEMENT EXISTS BETWEEN THE PARTIES.

This Court should not only compel the arbitration of FTB's claims, but it should also stay the discovery and proceedings in this matter until the conclusion of the arbitration proceedings.[1]

---

[1] Note that undersigned has filed an Answer preserving TrackSure's defenses to Plaintiffs' claims, which includes the defense that Plaintiffs' claims, which are allegedly derivative of the

A stay is proper in this action under Section 3 of the FAA, which provides for a stay of litigation where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

In enacting Section 3, Congress deliberately chose not to utilize mere precatory words giving discretion to trial courts in deciding whether a stay should issue. Instead, the stay provisions found in Section 3 of the FAA are mandatory. Under the Federal Arbitration Act, "if arbitration is indicated by the contract, then a stay is required by the statute." *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987). *See also, Ex parte Main Street South, Ltd.*, 577 So. 2d 1289 (Ala. 1991) (holding that judicial proceedings should be stayed pending arbitration); *Ex parte Redshaw, Inc.*, 524 So. 2d 367, 369 (Ala. Civ. App. 1987) (same).

Moreover, Section 7 of the FAA provides for discovery by the arbitrator. Therefore, any additional discovery would create "dual discovery," thereby contravening the very expense and delay-saving purpose which arbitration was designed to serve in the first place. *See Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648 (11th Cir. 1988) (reversing a district court's decision to allow discovery to proceed during arbitration); *Corpman v. Prudential-Bache Securities, Inc.*, 907 F.2d 29 (3d Cir. 1990) (same); *Sacco v. Prudential-Bache Securities, Inc.*, 703 F. Supp. 362 (E.D. Pa. 1988) (same); *Corcoran v. Shearson Lehman/American Express, Inc.*, 596 F. Supp. 1113, 1117 (N.D. Ga. 1984) (same); *Mississippi*

---

agreements between Fifth Third and TrackSure, are due to be compelled to arbitration, and also asserting that those claims are subject to a stay.

*Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D. Miss. 1976) (same).  For these reasons, if this Court enters an order compelling arbitration, which it should, the Court must stay the proceedings, including discovery during the pendency of the arbitration proceedings.

TrackSure reserves all defenses available to it under Fed.R.Civ.P. Rule 12(b), and by filing this motion, does not, in any way intend to waive its defenses to the claims brought against TrackSure by either FTB or TrackSure.

## CONCLUSION

For the foregoing reasons, TrackSure respectfully requests this Court to compel FTB's claims to arbitration and stay all proceedings pending as between these parties until the conclusion of the arbitration proceedings.  There is a valid written arbitration agreement; the transaction clearly involved interstate commerce; and the Arbitration Agreement encompasses the claims in this action.

WHEREFORE, PREMISES CONSIDERED, TrackSure respectfully requests that this Court enter an order compelling Plaintiffs' claims against TrackSure to arbitration and staying all proceedings in this matter against TrackSure until the completion of said arbitration.

Respectfully submitted this the 25th day of May, 2011:

*s/ John P. Browning*
JENNIFER M. BUSBY (BUSBJ4965)
JOHN P. BROWNING (BROWJ6884)
Attorneys for Defendant
TRACKSURE INSURANCE AGENCY, INC. and
ASSURANT, INC

**OF COUNSEL:**

John P. Browning (BROWJ6884)
BURR & FORMAN LLP
P.O. Box 2287
Mobile, Alabama  36652-2287
Telephone: (251) 344-5151
Facsimile:  (251) 344-9696
jbrownin@burr.com


Jennifer M. Busby (BUSBJ4965)
BURR & FORMAN, LLP
420 N. 20th Street, Suite 3400
Birmingham, Alabama 35203
Phone: (205) 458-5341
Fax:     (205) 244-5614
Gbusby@burr.com


**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 25th day of May, 2011:

| | |
|---|---|
| Kenneth J. Riemer<br>James Donnie Patterson<br>UNDERWOOD & REIMER PC<br>Post Office Box 1206<br>Mobile, AL 36633 | Earl P. Underwood<br>UNDERWOOD & RIEMER PC<br>21 South Section Street<br>Fairhope, AL 36532 |
| M. Warren Butler<br>Scott D. Stevens<br>STARNES DAVIS FLORIE LLP<br>Post Office Box 1548<br>Mobile, AL 36633-1548 | Marc F. Kirkland<br>STRASBURGER & PRICE, LLP<br>2801 Network Boulevard, Ste 600<br>Frisco, Texas 75034.1872 |
| Matthew W. Robinett<br>NORMAN WOOD KENDRICK & TURNER<br>505 20th Street North, Ste. 1600<br>Birmingham, AL 35203 | L. Jackson Young Jr.<br>FERGUSON FROST & DODSON LLP<br>2500 Acton Road, Ste 200<br>Birmingham, Alabama 35243 |
| Tasheika Hinson<br>JONES DAY<br>1420 Peachtree Street NE, Ste. 800<br>Atlanta, GA 30309 | Brian J. Olson<br>KING & SPALDING LLP<br>1180 Peachtree St NE<br>Atlanta, GA 30309-3521 |

Keasha Ann Broussard
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309

Kirkland E. Reid
Kenneth A. Watson
JONES WALKER WAECHTER
POITEVENT CARRERE & DENEGRE LLP
Post Office Box 46
Mobile, AL 36601


                    *s/ John P. Browning*
                    OF COUNSEL